# CHARLESTON.

## LONG *v.* POTTS.

Submitted June 4, 1910.   Decided February 20, 1912.

PAROL EVIDENCE—*Promissory Note.*

    Parol evidence to affect a promissory note. Owing to a division of opinion among the members of the Court no syllabus of law is made.

Error to Circuit Court, Wetzel County.

Charles Amos Long brought an action against Potts and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Thomas P. Jacobs* and *E. L. Robinson,* for plaintiff in error.

*P. D. Morris* and *T. H. Cornett,* for defendant in error.

BRANNON, JUDGE:

Charles Amos Long brought *assumpsit* against W. F. Potts, Alex Hart and Justice Eakin on a promissory note made by Potts, and Eakin. Much oral evidence was produced. Upon a demurrer by the plaintiff to the defendants' evidence judgment was for the plaintiff.

Hart and Eakin pleaded *non assumpsit* and a special plea. This special plea avers that on the day when the note was executed, and before and at the time it was executed, it was agreed between Long and Eakin and Hart that if Eakin and Hart would execute the note as sureties for Potts at twenty days that within that time Long would procure from Potts, and Potts would execute, a deed of trust for the benefit of Long, and in exoneration and in indemnification of Eakin and Hart, on sufficient estate to secure payment of the note; not only to secure the debt, but to indemnify Eakin and Hart by reason of their suretyship. The plea avers that Eakin and Hart by the procurement of the plaintiff, and upon the said agreement, became sureties upon said note for twenty days, with the agreement and assurance that within that time Long would procure Potts, to execute and Potts would execute, such trust, which said Potts agreed to, and was able to do. The plea further averred that Long, contriving to injure Eakin and Hart, after he had procured said note and their signatures thereon, failed and refused to secure the execution of said trust, though Potts was at all times ready and willing to execute it. The plea was objected to by the plaintiff and that objection was overruled and the plaintiff cross assigns error. It says that the plea constitutes no defence. Is that plea good in law? I lay down the proposition, spoken by infinite cases, that a writing is deemed in law the full repository of the agreement or contract, and that the whole con-

tract is expressed by it, and evidence of other oral stipulations is not admissible to incorporate other elements in it so as to add to, alter or contradict the agreement spoken by the writing, or to alter it by enlargement of its terms and make the contract have different legal effect and obligation. *Long* v. *Perine*, 41 W. Va. 314; *Orrick Co.* v. *Dawson*, 67 W. Va. 403; *Martin* v. *Railroad*, 48 W. Va. 542. In *Towner* v. *Lucas*, 13 Grat 705, we find the law thus stated: "It was said by the court in the *Countess of Rutland's Case*, 5 Coke's R. 25, 'that it would be incon- venient that matters in writing, made by advice and on consid- eration, and which finally import the certain truth and agree- ment of the parties, should be controlled by averment of parties, to be proved by the uncertain testimony of slippery memory.' In *Stevens* v. *Cooper*, 1 John. Ch. R. 425, Chancellor Kent re- marks 'that there is no rule of evidence better settled than that which declares that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement. Such testimony is not only contrary to the statute of frauds, but to the maxims of the common law; and the rules of evidence on this as on most other points, are the same in courts of law and equity.' See *Fell* v. *Chamberlin*, 2 Dick. R. 484; *Woodlam* v. *Hearn*, 7 Ves. R. 211; *Jordan* v. *Sawkins*, 3 Bro. C. C. 388. In *Crawford* v. *Jarrett*, 2 Leigh 630, Green, J., states the rule in these words: 'Parol evidence cannot be admitted (unless in case of fraud or mistake) to vary, contradict, add to or explain the terms of a written agreement, by proving that the agreement of the parties was different from what it appears by the writing to have been.' In *Watson* v. *Hurt*, 6 Grat. 633, 644, Judge Baldwin announces the rule in the following terms: 'It is perfectly well settled that the terms of a written contract can- not be varied by parol evidence of what occurred between the parties previously thereto or contemporaneously therewith.' In 1 Greenl. Ev., section 275, the author observes that the rule as now briefly expressed is, 'that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.' The rule thus announced as a rule of the com- mon law at so early a day has been uniformly adhered to by the courts both of England and this country ever since; but in the application of it to different instruments, difficulties have

arisen. Courts, while laying down the rule as unquestioned and unquestionable, and professing to recognize its wisdom and binding authority, have drawn distinctions to take particular cases of apparent hardship from without its operation, which at first view would seem to violate the rule itself." In that case a surety was induced to sign a bond by a promise that he would not be asked to pay; but that oral agreement was held unavailable. In *Woodward, Baldwin & Co.* v. *Foster,* 18 Grat. 200, a party endorsed a bill of exchange, and it was agreed that the endorsee should retain in his hand the amount paid by him for the bills, and not pay the money over to the drawer of the bill until it was ascertained that the bill had been accepted and paid, and if not accepted and paid by the drawee, then Foster would refund the money paid him for them. It was held that evidence of this collateral agreement could not be received. The principle above stated was laid down by the court. In 9 Ency. of Evidence 352 it is stated that if it appears that a writing in itself appears to be incomplete, oral evidence of contemporaneous agreement may be received; but "if, when so viewed, the writing appears to be complete such evidence is then inadmissible." Page on Contracts says that in order to let in such evidence the contract must be incomplete on its face. See 1198. Now, here is a promissory note complete on its face, speaking an absolute promise to pay, imposing an absolute liability; but that character and legal effect are to be destroyed by oral evidence of a collateral agreement. Another contract is made by this evidence far different from the contract legally imported by the note. The note in law imports absolute, unconditional liability; whereas, this oral evidence contradicts it by speaking an inconsistent contract; it qualifies the absolute liability created by the note. Why is it not inconsistent with that note? Much could be written on this subject. If such parol evidence is let in, what becomes of your written contract? What worth is your promissory note? In 17 Cyc. 567 referring to the rule excluding such oral evidence, it is said: "The rule is a necessary one because of the obvious fact that written instruments would soon come to be of little value, if their explicit provisions could be varied, controlled or superseded by such evidence, and it is also plain that a different rule would greatly increase the temptation to commit perjury."

An absolute note cannot be defeated by oral proof of a condition. *Ervin* v. *Saunders*, 13 Am. Dec. 520. In 17 Cyc. 589, I find the following: "Although the authorities as to the admissibility of parol evidence to affect commercial paper are by no means uniform, the general rule is that bills, and other instruments of a similar nature are not subject to be varied or contradicted by parol or extrinsic evidence. Accordingly it has been held inadmissible to show a parol agreement of the payee or holder of commercial paper not to enforce payment against the person or persons liable thereon, or a parol agreement that the payee or holder shall look to some other person or persons for payment, that he shall require payment only in a certain event or out of some particular fund, that he shall not require payment until a certain security has been exhausted, or shall not call on one of the persons liable for payment until all remedies against the others have been exhausted. It has also been held not admissible to show that the time for the payment of the obligation as agreed upon by the parties is different from the date of maturity as appearing in the instrument, to contradict a note as to the place of payment, or where by the express terms or legal effect of an instrument it is payable in money to show that it was agreed that it should be paid in any other 'way. It has also been asserted that any evidence varying or nullifying the effect of a written acceptance of a bill is inadmissible." There are cases leading the other way. They say that collateral or independent facts not contradicting the writing may be proven. *Campbell* v. *Fetterman*, 20 W. Va. 398; 10 Encyclopedia Dig. Va. & W. Va. 693-9. This rule says the matter to be proven by the oral evidence must not be inconsistent with the writing; but in our case it is. So, those cases do not strictly apply. And how many Va. & W. Va. cases apply the rule just above stated? Page on Contracts, the latest great work on contracts, section 1189, after saying that when parties have made a written contract, it is taken to embody all of it, "and merges all prior and contemporaneous negotiations," adds "To violate this rule and to admit extrinsic evidence of the intention of the parties direct for the purpose of displacing their intention as shown in the written contract, is "to substitute the inferior for the superior degree evidence—conjecture for fact—presumption for the high-

est degree of legal authority—loose recollection and uncertainty of memory for the most sure and faithful memorials which human ingenuity can devise or the law adopt." See also section 1192.

Another view, not without force, is, that this collateral agreement to procure a deed of trust can not be pleaded against the note, but must be enforced by a separate action for its breach. The New York court of appeals so held in *Adams* v. *Gillig,* 19? N. Y. 314, 20 Ann. Cas. 911. "It may be assumed that promises of future action that are a part of the contract between the parties, to be binding upon them, must be stated in the contract. An oral restrictive covenant, or any oral promise to do or refrain from doing something effecting the property about which a written contract is made and executed between the parties, will not be enforced, not because the parties should not fulfil their promises and their legal and moral obligations, but because the covenants and agreements being promissory and contractual in their nature and a part of, or collateral to, a principle contract, the entire agreement between the parties must be deemed to have been merged in the writing. The value of a writing would be very seriously impaired if the rule mentioned in regard to including the entire agreement in such writing is not enforced. A strict enforcement of such rule tends to greater security and safety in business transactions and leaves less opportunity for dishonesty and false swearing, induced perhaps, by a change of purpose or a failure to obtain the result that was anticipated when the transaction was originally consummated and reduced to writing. Such rule makes it necessary for the parties to a written contract to include everything therein pertaining to the subject matter of the principal contract, and if by mistake or otherwise an oral agreement, a part of the transaction is omitted from the writing, it can only be made effective and enforceable by a reformation of the writing, so that the same shall include therein the entire agreement between the parties. The rule is quite universal that statements promissory in their nature and relating to future actions must be enforced if at all by an action upon the contract. It is unnecessary to decide or discuss the question whether under some possible circumstances the courts will not in equity lay hold of false statements

that are contractual in their nature to prevent the consummation of a fraud." I have shown that such is the great volume of law in England and America. What is the plain, sound, safe rule? What are the boundaries or limit of its exceptions, when once we ignore the rule? I confess that I am strenuous to maintain this rule of safety and reason. That plea alleges that Long took upon himself the duty to get Potts to make said deed of trust. It is not necessary or proper to repeat the evidence. I assert that it does not sustain the plea by proving that Long took upon himself that obligation. The proposition to give a deed of trust originated with Potts as inducement for a loan. When Potts said that he would give it, Long only assented to it as Potts' proposal. It was Potts who assured the sureties that he would make the deed of trust. It is likely that Potts would so promise, unlikely that Long would assume the duty, and agree that if he did not get the deed, his loan of $1,000 would be lost. Highly unreasonable. It is not proven.

Judge WILLIAMS and I hold that the plea is no bar in law. Judge ROBINSON and I hold that the evidence does not sustain the plea. Judge WILLIAMS and I say the evidence cannot be heard.

The result is that the judgment be affirmed.

*Affirmed.*

POFFENBARGER, JUDGE, *(dissenting)*:

The rule inhibiting parol evidence to contradict, vary or add to the terms of a written contract is not questioned nor its wisdom doubted; but it has well known and wholesome exceptions, one of which is that an oral contract, constituting an inducement to the execution of the written contract may be shown, breach of which discharges the written contract or estops the party claiming under it. Page on Contracts, sec. 1204. Eakin and Hart were sureties, benefitted in no way by the transaction, and induced to sign the note by Long's expression of assent to the condition. It was a collateral arrangement for discharge of the note, the sureties being liable in the event of failure of the principal to give the deed of trust within the specified time. It allows the note effect according to its letter, but sets up an agreement to which the payee was a party, non-performance of

which amounts to a constructive fraud upon the sureties. Having gotten them on the note, the payee refused to accept the deed of trust tendered in accordance with his collateral agreement with them and the prior agreement between him and the principal, evidently because he prefers the personal security for some reason. The parol evidence rule was never intended for use as a means of accomplishing inequitable and unjust purposes. Nor is there any public policy or reason which forbids such an agreement as the one set up here as attendant upon the written contract, which is obviously only a memorandum and, in a sense, incomplete, not reciting any consideration or containing any covenant or agreement on the part of the payee. It is not a formal and elaborate contract, purporting to cover all that transpired between the parties, nor in any way indicating their situation or the purposes of the agreement.

For these reasons, Judge MILLER and I dissent.